UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| GEORGE HUNTER, | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Case No. 3:20-cv-00702-CRS |
| | ) | *Electronically Filed* |
| OKLAHOMA STUDENT LOAN | ) | |
| AUTHORITY, | ) | |
| *Defendant* | ) | |

## MOTION TO DISMISS

The Defendant, Oklahoma Student Loan Authority ("OSLA") moves this Court to dismiss the Plaintiff, George Hunter's ("Hunter") Complaint under Federal Rule of Civil Procedure 12(b)(1) and the Eleventh Amendment to the United States Constitution. In support of its Motion, OSLA states as follows:

## INTRODUCTION

Hunter is a Kentucky resident who previously opened student loan accounts with the United States Department of Education (the "Department"). [DE 1, Page ID # 3]. According to Hunter, sometime "prior to May 2020," the Department "assigned or otherwise transferred the student loan accounts to OSLA." [*Id.*]. In May 2020, he claims that he "accessed his Equifax credit report and discovered two OSLA zero balance student loan tradelines impermissibly reporting a default history" and that the report "falsely report[ed] a current late status on the OSLA accounts." [*Id.*]. Hunter contends he contacted Equifax to dispute the tradelines, but never received the results of his dispute. [*Id.*].

Hunter alleges that OSLA and Equifax "failed to investigate the tradelines and failed to delete or amend the inaccurate OSLA tradelines." [*Id.*]. As a result, he claims he has "been denied credit and/or has been forced to pay a high rate of interest for credit." [*Id.*]. Hunter filed his

Complaint in October 2020 against OSLA and Equifax, asserting two counts against each for negligent and willful violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.* [*Id.* at Page ID # 4-5]. [1]

OSLA is an arm of the State of Oklahoma and is immune from federal lawsuits under the Eleventh Amendment to the United States Constitution. Specifically, OSLA is statutorily designated as "an agency" of the State of Oklahoma created "for the specific object and purpose of providing student loan funds pursuant to [the] requirements of any appropriate federal agency to qualified persons." 70 Okla. Stat. § 695.3. Hunter's Complaint against OSLA plainly seeks money damages for alleged negligent and willful violations of the FCRA. [*See* DE 1]. The Eleventh Amendment categorically bars Hunter's complaint. This Court accordingly lacks subject matter jurisdiction over Hunter's claims and Hunter's Complaint should be dismissed with prejudice.

## ARGUMENT

### I.     Standard of Review.

A motion to dismiss asserting the defense of Eleventh Amendment immunity presents a challenge to the court's subject matter jurisdiction, and is properly analyzed within Rule 12(b)(1). In reviewing motions to dismiss under Rule 12(b)(1), "[s]ubject matter jurisdiction is always a threshold determination." *American Telecom Co. v. Republic of Leb.*, 501 F.3d 534, 537 (6th Cir. 2007). When subject matter jurisdiction is challenged, the *plaintiff* bears the burden of proving jurisdiction in order to survive a 12(b)(1) motion. *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 2009); *Mooneyham v. Equifax Information Servs., LLC*, 99

---

[1] Hunter voluntarily dismissed his claims against Equifax on March 3, 2021. [*See* DE 9].

F.Supp.3d 720, 722 (W.D. Ky. 2015). A court must dismiss an action if it determines at any point in the proceeding that it lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

Generally, a 12(b)(1) motion "can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *Smith v. Westlake Vinyls, Inc.*, 403 F.Supp.3d 625, 629 (W.D. Ky. 2019). For facial attacks, the motion "questions merely the sufficiency of the pleading." *Id.* at 630 (quoting *Gentek Bldg. Prods. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). For factual attacks, by contrast, "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996)).

Sovereign immunity serves as an independent basis for a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction. *Muniz-Muniz v. U.S. Border Patrol*, 741 F.3d 668, 671 (6th Cir. 2013). The party asserting immunity bears the burden of establishing same. *See Nair v. Oakland Cty. Cmty. Mental Health Auth.*, 443 F.3d 469, 474 (6th Cir. 2006). Whether Eleventh Amendment immunity exists in a given case is a pure question of constitutional law. *Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005); *S.J. v. Hamilton Cty.*, 374 F.3d 416, 418 (6th Cir. 2004).

## II.     OSLA is Entitled to Sovereign Immunity Under the Eleventh Amendment.

The Eleventh Amendment to the United States Constitution provides states with immunity from suit in federal court:

> The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI; s*ee also Virginia Off. for Prot. and Advocacy v. Stewart*, 563 U.S. 247 (2011) (The Eleventh Amendment guarantees that "absent waiver and valid abrogation, federal courts may not entertain a private person's suit against a State"). The Supreme Court has clarified that "first, . . . each State is a sovereign entity in our federal system; and second, . . . [i]t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent[.]" *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996) (internal citations omitted). It has been continually reaffirmed for over a century that "federal jurisdiction over suits against unconsenting states was not contemplated by the Constitution when establishing the judicial power of the United States." *Id.* This immunity from suit in federal court "applies to claims against a State by citizens of the same State as well as to claims against a State by citizens of another State." *Ernst*, 427 F.3d at 358 (6th Cir. 2005); *Hans v. Louisiana*, 134 U.S. 1 (1890).

Constitutional immunity "bars a suit brought in federal court against a state ***and its departments or agencies*** unless the state has waived its sovereign immunity or unequivocally consented to be sued." *River City Fraternal Order of Policy Lodge 614, Inc. v. Kentucky Ret. Sys.*, 375 F.Supp.3d 748, 767 (E.D. Ky. 2019) (emphasis added) (quoting *Hill v. Michigan*, 62 F. App'x 114, 115 (6th Cir. 2003)). In other words, immunity attaches if the suit is "against the State or an 'arm of the State.'" *Id.* (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)).

The Sixth Circuit has provided a four-factor test to determine whether an entity is a "department" or "arm" of the State for purposes of the Eleventh Amendment. *See Ernst*, 427 F.3d at 359. In this regard, the Sixth Circuit instructs reviewing courts to consider: (1) the State's "potential legal liability"; (2) the language used "by state courts and statutes" to refer to an agency and the "degree of control and veto power" the state has over the agency; (3) "whether state or

local entities appoint board members for the agency"; and (4) whether the agency's "functions fall under the traditional purview of state or local government." *Id.* (endorsing *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30 (1994). With that said, "[t]he state's potential legal liability for a judgment against an entity 'is the foremost factor' to consider in [a] sovereign immunity analysis." *Waskul v. Washtenaw Cty. Comm. Mental Health*, 979 F.3d 426, 443 (6th Cir. 2020) (quoting *Lowe v. Hamilton Cty. Dep't of Job & Fam. Servs.*, 610 F.3d 321, 325 (6th Cir. 2010)).

In this case, OSLA easily satisfies each of these factors and is properly considered to be an "arm" of the State of Oklahoma for purposes of the Eleventh Amendment.

### A.    The State of Oklahoma is "Potentially Legally Liable."

As the "foremost factor" in the Eleventh Amendment immunity analysis, the State of Oklahoma's "potential liability for judgment must be given substantial weight" in the analysis. *Kreipke v. Wayne State Univ.*, 807 F.3d 768, 776 (6th Cir. 2015) (referring to *Ernst*, 427 F.3d at 359). The central inquiry in this factor is "the state treasury's *potential* legal liability for the judgment, not whether the state treasury will pay for the judgment in *that* case." *Ernst*, 427 F.3d at 359 (referring to *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 431 (1997)). In essence, this determination hinges on whether the State bears ultimate legal responsibility for the entity's actions.

OSLA's initial funding confirms that it is an arm of the state and that Oklahoma's treasury is potentially liable for a judgment against OSLA. OSLA is entirely a creature of statute that does not exist independent of the Oklahoma state government. *See, e.g.,* 70 Okla. Stat. § 695.3. Though it is capable of raising funds through the student loans that it services, finances, and collects, OSLA's initial funds used to purchase those loans were derived from the Student Loan Fund, which was created by the Oklahoma state legislature. 70 Okla. Stat. § 695.5.

5

The Oklahoma Student Loan Act requires OSLA to "take whatever action may be necessary" to collect from the borrower "to assure that ***the State of Oklahoma*** will not suffer any loss in connection with default payments." 70 Okla. Stat. § 695.18 (emphasis added). Moreover, as a public trust, the State of Oklahoma is the trust's primary beneficiary. And under Oklahoma law, before a public trust may be terminated by the trustees and the Governor, it must extinguish its contractual obligations because "by reason of such termination, [such obligations] ***might become an obligation of the beneficiary of such trust***," which in this case is the State itself. 60 Okla. Stat. § 180(a) (emphasis added). Each of these provisions plainly contemplate that the State bears the ultimate consequence for OSLA's actions and would face potential legal liability in the event of Hunter's success.

OSLA's funds are, at bottom, controlled by the State of Oklahoma for the benefit of Oklahoma. Thus, because the Student Loan Fund was created by the Oklahoma legislature—and OSLA's funding is tied to the Student Loan Fund—the State of Oklahoma could ultimately be responsible for paying any judgment and/or complying with any order entered against OSLA. Under any view, this makes the Oklahoma treasury "potentially legally liable" for satisfying Hunter's claims. As such, OSLA is an arm of the State for Eleventh Amendment purposes.

### B.     Oklahoma State Law Clearly Treats OSLA as a State Agency.

The second factor in the Eleventh Amendment immunity analysis includes four considerations: (1) how state statutes refer to the entity; (2) how state courts refer to the entity; (3) the degree of state control over the agency; and (4) the state's veto power over the entity's actions. *Kreipke*, 807 F.3d at 777; *Ernst*, 427 F.3d at 359.

Here, OSLA's enabling act explicitly states that it is "an agency of the State of Oklahoma," which is tasked with "carry[ing] out the provisions of the [Oklahoma Student Loan] Act." 70 Okla.

Stat. § 695.3.[2] This characterization is confirmed by Oklahoma courts and the Oklahoma Attorney General in legal opinions dating back to the 1980s. *See, e.g., State ex rel. Oklahoma Student Loan Auth. v. Akers*, 900 P.2d 468, 470 (Okla. Civ. App. 1995) (OSLA "is a state agency, operating under the trust authority of statute"); 15 Okla. Op. Att'y Gen. 481 ("The State, through an agency [OSLA], [provides] student loan funds to qualified students"). It is apparent that the State of Oklahoma holds OSLA out as a state agency tasked with administering state business.

Beyond its express designation as a state agency, Oklahoma further confirms that OSLA is an arm of the state through its control over OSLA's budgetary and financial activities. Oklahoma statute provides that if OSLA issues any bonds, they must be reviewed and pre-approved by the Oklahoma Attorney General. 70 Okla. Stat. § 695.9. OSLA must similarly submit its budget to the Oklahoma Governor, Senate, and House of Representatives and is required to obtain an audit by the State Auditor and Inspector, or by a certified public accountant of its designation. *See* 70 Okla. Stat. § 695.21. As part of its annual audit, the State Auditor and Inspector "shall have the power to take custody of any records necessary to the performance of the audit." *Id.* Finally, the Oklahoma Attorney General's office controls all of OSLA's legal representation and dictates all decisions concerning representation by outside counsel. *See* 60 Okla. Stat. § 178(A); 74 Okla. Stat. §§ 18(b)-18(c). In essence, the State exerts considerable control over OSLA's activities, with essentially all of its functions subject to approval by the Governor, the State legislature, or other State executive officers.

---

[2] In addition to designating OSLA as an official state agency, the Oklahoma legislature further classifies it as a "public trust," created by and for the benefit of the State of Oklahoma. Under Oklahoma law, public trusts are specifically created by the legislature to accomplish "a public function." 60 Okla. Stat. § 176; 70 Okla. Stat. § 695.3. While OSLA wears two hats as public agency and public trust, Hunter's assertion that it is an Oklahoma "corporation" is false as a matter of law. [DE 1, Page ID # 2].

Notably, federal courts throughout the country have repeatedly acknowledged that OSLA is an arm of the State of Oklahoma for purposes of the Eleventh Amendment and that it may not be sued under the FCRA. *See Abellard v. Oklahoma Student Loan Auth.*, 2018 WL 654462, Case No. 17-62064-CIV-MORENO (S.D. Fla. Jan. 29, 2018) (OSLA "is an arm of the state for purposes of the Eleventh Amendment"); *Reeves v. Nelnet Loan Servs.*, 2018 WL 2200112, Case No. 4:17-cv-3726 (S.D. Tex. May 14, 2018) (same).[3] In other words, those courts determined that OSLA is legally an arm of the State of Oklahoma under the Fifth Circuit and Eleventh Circuit's respective standards. Though the Sixth Circuit's standard is slightly different, it does not dictate a different result.

At the end of the day, Oklahoma statutes, Oklahoma case law, Oklahoma Attorney General opinions, and *federal* case law all agree that OSLA is an agency of the State of Oklahoma and is an arm of the State for purposes of Eleventh Amendment immunity.

### C.    OSLA Board Members are Entirely Chosen By the State.

The third factor instructs reviewing courts to ask whether state or local officials appoint the members of OSLA's board. Under the *Ernst* analysis, if *state* officials have appointment power, then this factor weighs in favor of finding that the entity is an arm of the state, but if *local* officials have appointment power, then this factor weighs against sovereign immunity. *Ernst*, 427 F.3d at 360-61; *Kreipke*, 807 F.3d at 778. Here, the entirety of OSLA's board is chosen by the Governor and state legislature—there is no local control whatsoever.

OSLA's trustees are entirely chosen by the State, further ensuring that the state controls its actions. Those entrusted with overseeing OSLA's operation consist of "five (5) members ***appointed by the Governor [of the State of Oklahoma] with the advice and consent of the Senate***

---

[3] Copies of both the *Abellard* and *Reeves* opinions are attached hereto as collective **Exhibit A**.

*[of the State of Oklahoma]*." 70 Okla. Stat. § 659.4 (emphasis added). The Oklahoma legislature codified the length of each trustee's term to five years and determined that they may be removable for cause by the **Oklahoma Governor**. *Id.* Because OSLA's trustees are entirely chosen by the State and the State exerts considerable control over its leadership, this factor also weighs in favor of immunity from suit.

### D.     OSLA's Functions Fall within the Traditional Purview of State Government.

The final factor in this analysis is whether OSLA's functions fall within the traditional purview of state or local government. "The question of whether a function is within the state's traditional purview is determined by analyzing whether the state has a history of performing or providing the same function or service." *Kreipke*, 807 F.3d at 780. This fourth factor "does not ask whether the specific functions at issue are traditionally performed by the state, but rather 'the entity's functions' in general." *United States ex rel. Brinkley v. Univ. of Louisville*, 2017 WL 210244, Case No. 3:15-cv-180-DJH (W.D. Ky. Jan. 17, 2017) (quoting *Kreipke*, 807 F.3d at 775)). It is well settled that "higher education is a function within the traditional purview of state government." *Id.*

Under the Oklahoma Student Loan Act, the Oklahoma Governor was statutorily authorized "to accept beneficial interest on behalf of the State of Oklahoma in an express trust **which shall be an agency of the state** for the specific object and purpose of providing student loan funds pursuant to [the] requirements of any appropriate federal agency to qualified persons." 70 Okla. Stat. § 695.3. OSLA is equally authorized to issue bonds (subject to the Oklahoma Attorney General's approval), which are issued "on behalf of the State of Oklahoma," with the income resulting therefrom "free from taxation within [the] state." *Id*. Proceeds from the sale of bonds are mandated to be "deposited to the credit of the Student Loan Fund." *Id.* at §§ 695.5, 695.11. Moreover, OSLA

operates a supplemental loan program for students ineligible for loans under the federally insured loan program. *Id.* at § 695.18.

The Oklahoma Student Loan Fund is a creature of Oklahoma state law, which is operated entirely on the State level. OSLA is the state agency that the Oklahoma state legislature created to oversee and administer the Fund in accordance with the Oklahoma Student Loan Act of 1972. It also serves as a public trust with the statutory instruction to extend student loans to qualified students on the State's behalf. The Oklahoma government has expressly charged OSLA with implementing and executing these functions, all of which are carried out solely at the State level and directly on the State's behalf. In sum, OSLA serves as both state agency and public trust for the sole business of carrying out the State's business. By carrying out this exclusive State function, all of OSLA's functions fall within the "traditional purview" of Oklahoma State government.

## CONCLUSION

For the foregoing reasons, Hunter's complaint is barred by the Eleventh Amendment and should be dismissed with prejudice.

Respectfully submitted,

    */s/Thomas E. Travis*
W. Craig Robertson III
wrobertson@wyattfirm.com
Thomas E. Travis
ttravis@wyattfirm.com
WYATT, TARRANT & COMBS, LLP
250 West Main Street, Suite 1600
Lexington, Kentucky  40507-1746
859.233.2012
*Counsel for Defendant, Oklahoma Student Loan Authority*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day of April, 2021, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will then send notification of such filing (NEF) to all counsel of record.


/s/ Thomas E. Travis
*Counsel for Defendant*

11